IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAMELA SHARP,

                Plaintiff,

vs.                                              Case No. 15-9066-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.

## MEMORANDUM AND ORDER

On August 24, 2012, plaintiff filed an application for disability insurance benefits. Plaintiff alleged a disability onset date of October 25, 2010. On November 25, 2013, a hearing was conducted upon plaintiff's application. The administrative law judge (ALJ) considered the evidence and decided on January 21, 2014 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits. Plaintiff argues that the ALJ did not properly weigh the evidence from plaintiff's treating physicians and that substantial evidence does not support the ALJ's assessment of plaintiff's residual functional capacity. For the reasons

described below, the court concurs with plaintiff's arguments and shall remand this case for further proceedings.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the

defendant's decision.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994) (quoting <u>Casias v. Secretary of Health & Human Services</u>, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting <u>Zoltanski v. F.A.A.</u>, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 9-19).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 10-11).  First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her

residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fourth and fifth steps of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff last met the insured status requirements for Social Security benefits on December 31, 2011. Thus, the critical issue in this case is whether plaintiff was disabled as defined by the law between October 25, 2010, the alleged onset date, and December 31, 2011. Second, plaintiff did not engage in substantial gainful activity from the alleged onset date through December 31, 2011. Third, plaintiff had the following severe impairments through the date last insured: irritable bowel disease or irritable bowel syndrome (IBS); anxiety disorder; and substance addiction. Fourth, through the date last insured, plaintiff did not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Fifth, as of the date last insured, plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(b) in that plaintiff could occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds. The ALJ further found that plaintiff was capable of sitting for up to six hours and standing and walking for six hours in an 8-hour workday. The ALJ also concluded: that plaintiff could push and pull; that she required access to restroom facilities within a two-minute walk of her workstation; and that she is limited to frequent contact with coworkers, supervisors and the general public.

The ALJ determined that plaintiff was capable of performing her past relevant work as a tow truck dispatcher and order clerk. The ALJ also found, finally, that plaintiff could perform other jobs existing in the national economy, such as linen room attendant, lamination assembler and twisting machine operator.

III. THE MEDICAL EVIDENCE OF PLAINTIFF'S SYMPTOMS DURING OR CLOSE TO THE RELEVANT PERIOD AND STATEMENTS FROM PLAINTIFF'S TREATING PHYSICIANS.

The medical records show that plaintiff reported abdominal pain in April 2011 and was considered to have a clinical history of abdominal pain and diarrhea. (Tr. 291). She was seen in a hospital emergency department with these symptoms. (Tr. 321). She reported that this had occurred numerous times. Id. It was

also recorded that, one year earlier, a Dr. Lee reported that plaintiff had "severe IBS." Id. On examination in April 2011, however, plaintiff's bowel sounds were normal and there was no mass. Id. Plaintiff was discharged in good condition. (Tr. 324). Plaintiff visited her treating gastroenterologist, Dr. Sue Brown, for a followup visit on May 3, 2011. The doctor's report of that visit noted a "longstanding history of IBS" for which plaintiff was taking Lotronex. (Tr. 263). It was further reported that plaintiff had been started on Librax and Questran and that she reported feeling better. Id. Dr. Brown commented regarding plaintiff's IBS: "This will be a management problem. It is plainly related to stressors in her history." Id. Dr. Brown further stated that plaintiff had "[a]ntibiotic associated diarrhea." Id.

On June 7, 2011, plaintiff had another visit with Dr. Brown. According to Dr. Brown, during that visit plaintiff said that her diarrhea had "completely resolved." (Tr. 261). Plaintiff also did not report abdominal pain. Her major complaint was about bronchitis. Id. Nevertheless, Dr. Brown listed IBS, diarrhea and recent antibiotic associated worsening of diarrhea, as health issues with plaintiff. Id. On December 29, 2011, plaintiff had another appointment with Dr. Brown. Dr. Brown reported:

6

> This 55 year old patient comes in for follow-up of GI symptoms. The patient still has some alternation of bowel habits. She tends to be a little more constipated at times. Does have postprandial bowel movements frequently. Sometimes it is loose but no persistent diarrhea. She does take the Bentyl on a regular basis which helps but it leaves her with a dry mouth she thinks. She has not had any blood in her stools, no weight loss. Sometimes her stools do get pasty appearing and she can get some mucus. She finds she has more symptoms when she has anxiety and she has been treated for this in the past. It has been quite a problem and has various other problems.

(Tr. 260). Dr. Brown listed plaintiff as having: "1. Alter[n]ation in bowel habits. IBS – mixed, anxiety related. 2 Anxiety disorder" and other health issues. Id. On May 17, 2012, which is beyond the date last insured, Dr. Brown again reported upon plaintiff's chronic diarrhea and history of IBS, stating that:

> "[plaintiff said] her biggest problem is some problem with chronic abdominal pain which is intermittent and loose stools. Her anxiety is better. She is taking Librax four times a day and all of this seems to be helpful. She considers herself constipated if she has one loose stool a day but she averages anywhere from 1 to 5. She is no longer having fecal incontinence, one episode in the last month or so."

(Tr. 285).

Dr. Brown completed a physical residual functional capacity questionnaire regarding plaintiff on April 2, 2013. (Tr. 344-348). IBS was the lead diagnosis. (Tr. 344). Weight loss was listed as an objective sign. Id. Dr. Brown stated that the impairment could be expected to last at least twelve months and

7

that emotional factors contributed to the severity of the symptoms. Id. Dr. Brown stated that plaintiff's symptoms would frequently interfere with attention and concentration for even simple work tasks and that plaintiff would have difficulty dealing with the stress of employment. (Tr. 345). It was estimated by Dr. Brown that plaintiff would be absent from work more than four days per month. (Tr. 347). Dr. Brown concluded that plaintiff's symptoms had been present since October 5, 2010.[1] (Tr. 348).

On March 30, 2013, plaintiff's primary care physician for 25 years, Dr. Bradley Appl, filled out a physical residual functional capacity questionnaire regarding plaintiff. (Tr. 357-361). His answers were similar to Dr. Brown's. He recorded that plaintiff has having IBS with diarrhea, and also having anxiety. He listed severe diarrhea and anxiety as symptoms. (Tr. 357). He answered that anxiety would hinder plaintiff's employment and that diarrhea would preclude her employment. (Tr. 358). He estimated that plaintiff would need to take 4 to 8 unscheduled breaks during an 8-hour workday and that each break would take 15 minutes. (Tr. 359). Dr. Appl also estimated that plaintiff would miss more than four days of work per month. (Tr. 360). Like Dr. Brown, Dr. Appl reported that

---

[1] The court does not take this statement to mean that plaintiff's symptoms started on that date. The record indicates that plaintiff had IBS symptoms years before October 5, 2010.

8

plaintiff's symptoms and limitations had been present since October 5, 2010.  (Tr. 361).

IV. THE ALJ'S CONSIDERATION OF THE TREATING PHYSICIANS' STATEMEMTS.

The ALJ gave Dr. Brown's opinion no weight because it was "not consistent with her treatment notes . . . during the relevant period. . . . [And,] the record shows that with treatment and medications, the claimant's symptoms resolved." (Tr. 17).  The ALJ cited Dr. Brown's notes which, as already mentioned, stated on December 29, 2011 that plaintiff took Bentyl "which helps," although plaintiff "still has some alternation of bowel habits." (Tr. 260).  Dr. Brown's notes also stated, on June 7, 2011, that plaintiff took Librax and that "the diarrhea has completely resolved [and] [s]he is not having abdominal pain."  (Tr. 260-61).

The ALJ gave Dr. Appl's opinion "some weight."  (Tr. 17). The ALJ credited Dr. Appl's opinion regarding plaintiff's ability to lift, carry, stand and walk.  But, he did not credit Dr. Appl's opinion regarding the impact of IBS and anxiety upon plaintiff's functional capacity.  He commented:

> Dr. Appl's opinion regarding claimant's functional limitations is consistent with his treatment notes and the treatment notes of Dr. Brown.  However, Dr. Appl's treatment notes during the relevant period do not reflect that the claimant required more than routine treatment for her symptoms, and her medications effectively controlled her symptoms. . . . Dr. Appl's treatment records [also] do not reflect that the

9

>     claimant sometimes uses marijuana to control her
>     symptoms instead of her prescribed medicines, a fact
>     she admitted to at the hearing.

(Tr. 17).

V. A REMAND FOR FURTHER CONSIDERATION AND DEVELOPMENT OF THE RECORD IS WARRANTED.

Plaintiff argues that the decision to deny benefits should be reversed because the ALJ erred in not giving controlling weight or at least greater weight to plaintiff's treating gastroenterologist and plaintiff's treating primary physician. Plaintiff's arguments focus upon the doctors' opinions relating to plaintiff's IBS and anxiety, and the impact these conditions had upon plaintiff's RFC during the relevant time period.

For step four of the sequential evaluation, the claimant bears the burden of establishing a prima facie case of disability. Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005). The court believes plaintiff satisfied her prima facie burden in this instance. The ALJ must "'assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis.'" Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir.1996)(quoting 20 C.F.R. § 404.1545(b). The procedure is nonadversarial and "the ALJ has a duty to ensure than an adequate record is developed during the disability hearing consistent with the issues raised." Wall v.

10

Astrue, 561 F.3d 1048, 1062-63 (10th Cir. 2009)(internal quotation marks omitted).

When evaluating a treating doctor's opinion, an ALJ must give the opinion controlling weight if it is well-supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Alfrey v. Astrue, 904 F.Supp.2d 1165, 1169 (D.Kan. 2012). A treating doctor's opinion must be weighed using all of the following factors: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id., citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). These are factors provided in 20 C.F.R. §§ 404.1527. If a treating physician's opinion is rejected completely, then the ALJ must give "specific, legitimate reasons for doing so." Alfrey, 904 F.Supp.2d at 1169. An ALJ, however, is not required to discuss every factor relevant to weighing a doctor's opinion. See Fulton v. Colvin, 2015 WL 6847808 *4 (10th

11

Cir. 11/9/2015); Anderson v. Colvin, 514 Fed.Appx. 756, 761-62 (10th Cir. 2013).

In this case, the ALJ rejected Dr. Brown's opinion completely and gave only "some weight" to the Dr. Appl's opinion because the ALJ concluded that their opinions were not consistent with their treatment records. Dr. Brown's records, as cited by the ALJ, showed that plaintiff's diarrhea had "completely resolved" on June 7, 2011 and that plaintiff did not have "persistent diarrhea" on December 29, 2011. The ALJ also noted that Dr. Appl's records (which are cursory) did not reflect that plaintiff required more than "routine treatment" and did not reflect that plaintiff sometimes uses marijuana to control her symptoms instead of prescribed medicines.

The court does not believe that the ALJ has provided adequate grounds on this record for discounting the opinions of Drs. Brown and Appl or crediting the ALJ's RFC findings. Drs. Brown and Appl did not represent that plaintiff's condition would prevent her from working every day. They represented that plaintiff would be required to miss work more than four days per month. Therefore, the observations in Dr. Brown's records that plaintiff's diarrhea was completely resolved on one day and was not persistent on another day are not strongly inconsistent with their opinions regarding plaintiff's ability to work,

12

particularly considering their length of history treating plaintiff.

The ALJ suggests, but does not expressly state or cite authority expressly finding, that "routine treatment" was sufficient to control plaintiff's symptoms. The ALJ implies either that plaintiff would have tried psychotherapy or yoga if prescribed medicine did not work, or that plaintiff should have tried psychotherapy or yoga to control her symptoms. But, the record is not developed to indicate that plaintiff did not try these alternatives, and, if not, then why. The record also does not show that the alternatives would have probably helped plaintiff. The record only indicates that plaintiff is "considering" psychotherapy and that plaintiff "might want to consider yoga exercise."[2] (Tr. 263-64).

The ALJ further suggests, again without authority, that plaintiff's use of marijuana instead of prescribed treatment may have interfered with the efficacy of the treatment ordered by plaintiff's doctors. This also appears to be overly speculative. The record does not clearly reflect how effective routine treatments were over a substantial span of time.[3] It also does not reflect how often and whether marijuana use in place of prescribed medicine hampered plaintiff's condition.

---

[2] Plaintiff also testified that she was receiving treatment for depression and anxiety which helped "a little bit." (Tr. 54).
[3] Plaintiff testified that she takes medicine "that sort of helps but it just depends." (Tr. 47).

13

The ALJ commented that the record shows that plaintiff is able to walk in her yard and that plaintiff testified that she is able to eat in restaurants and spend the night at friends' houses. (Tr. 15). This may not fairly represent the record.[4] But, even if it did, it is not sufficient evidence to demonstrate that plaintiff can work a regular job within the ALJ's RFC range without missing too many days or taking too many breaks.

The court also notes that the accommodation suggested by the ALJ – that plaintiff's work station be within two minutes of a bathroom – would not resolve the problem that frequent breaks from work, or missing work completely, would prevent plaintiff from maintaining substantial gainful employment. Plaintiff also testified that IBS causes her not to sleep at night and therefore be fatigued during the day. (Tr. 52). The work station accommodation does not address this issue.

Finally, the court observes that the ALJ did not appear to give weight to any medical opinion concerning the impact of plaintiff's IBS and anxiety upon her functional capacity, or concerning the nature and extent of plaintiff's symptoms during

---

[4] The record is at least inconclusive regarding restaurant visits. Plaintiff testified about having accidents when she went out to dinner with her family. (Tr. 50). On plaintiff's function report, plaintiff states that she can't go to restaurants or take long shopping trips or vacations because she is afraid she may have "accidents." (Tr. 218). Additionally, plaintiff testified that she watched a ballgame at a friend's house, but that she can't go spend the night anywhere. (Tr. 55).

14

the relevant period of time. Thus, the record seems devoid of what the ALJ deems to be a reliable medical opinion regarding plaintiff's functional capacity. The presence of a reliable medical source statement may not be required. 20 C.F.R. § 404.1513(b)(6). But, the absence of such a statement, together with the limited evidence supporting the ALJ's conclusions regarding plaintiff's functional capacity, convinces the court that further investigation is required. See Wall, 561 F.3d at 1062 (describing generally the duty to develop an adequate record consistent with the issues raised); Maestas v. Colvin, 618 Fed.Appx. 358, 361 (10th Cir. 2015)(describing generally the ALJ's duty to develop the record in cases where there are inconsistencies or inconclusive findings in the record).

VI. CONCLUSION

The court concludes that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow the law in evaluating the treating physicians' opinions and developing the record regarding plaintiff's residual functional capacity. Therefore, the decision denying benefits shall be reversed and remanded for further proceedings consistent with this memorandum and order. We acknowledge that plaintiff has asked that the court remand this matter for an immediate award of benefits. The court declines to do so because the court is not convinced that a remand for additional

fact-finding would be a useless task or that this matter has been pending for an undue period of time. See <u>Salazar v. Barnhart</u>, 468 F.3d 615, 626 (10th Cir. 2006)(listing relevant factors to consider when deciding whether to remand for an award of benefits). In rendering this decision, the court does not intend to imply that on remand the Commissioner must find plaintiff disabled. Judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 27th day of May, 2015, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge